UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHARLENE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 16-087-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LIFE INSURANCE COMPANY | ) | **MEMORANDUM OPINION** |
| OF NORTH AMERICA, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the plaintiff's motion for judgment reversing the defendants' decision to deny her request for long-term disability benefits. [Record No. 24] For the reasons that follow, the motion will be denied.

**I.**

Plaintiff Charlene Johnson ("plaintiff" or "Johnson") was employed by Toyota Motor Manufacturing of Kentucky ("TMMK") in Georgetown, Kentucky for approximately 21 years. In April 2010, Johnson stopped working due to a right knee injury requiring arthroscopic surgery. [Administrative Transcript, hereinafter "Tr.," 1227] During her employment at TMMK, she participated in an employee benefit plan (the "Plan") which included long-term disability ("LTD") benefits. The Plan was issued to TMMK by Life Insurance Company of North America ("LINA"), which also acted as the claims administrator for the LTD policy.

Under the Plan, disability is defined as follows:

The Team Member is considered Disabled if, solely because of Injury or Sickness, he or she is:

- 1 -

> 1. unable to perform the material duties of his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 18 months, the Team Member is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 60% or more of his or her Indexed Earnings.
>
> The Insurance Company will require proof of earnings and continued Disability.

[Tr. 1297]

Johnson received LTD benefits under the Plan from April 21, 2011, through August 8, 2014, due to her right knee impairment. [Tr. 1669, 1565] In August 2012, LINA determined that Johnson was capable of performing sedentary work, but a transferable skills analysis ("TSA") revealed that there were no suitable jobs in the local area that paid 60% or more of Johnson's previous indexed earnings. [Tr. 783] On November 7, 2013, LINA notified Johnson that it was reviewing her claim. Again, LINA determined that Johnson was able to perform sedentary work, and a new TSA found two suitable jobs in the Lexington, Kentucky area meeting the pay requirement. [Tr. 591] Accordingly, Johnson was informed that she no longer met the definition of disabled under the Plan. [Tr. 1565] She appealed the decision by letter dated December 23, 2014, but her appeal was denied on February 5, 2015. [Tr. 1555, 1483]

Johnson took advantage of a voluntary second-level of appeal offered in the policy. She filed a second appeal by letter dated August 10, 2015. Having received no decision from the defendants, Johnson filed this action under the Employee Retirement Income Security Act

of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on March 21, 2016, while the second administrative appeal was still pending. On April 7, 2016, LINA denied Johnson's second appeal.

**II.**

Generally, a plan administrator's denial of benefits is subject to *de novo* review "unless the benefit gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan does grant the administrator such authority, the highly deferential arbitrary and capricious standard applies. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). *See also Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). While "magic words" are not required, the plan must contain a "clear grant of discretion" before the arbitrary and capricious standard applies. *Frazier v. Life Ins. Co. of North Am.*, 725 F.3d 560, 566 (6th Cir. 2013).

In this case, the policy provides that one requirement of benefits is that team members must "provide the Insurance Company, at [the insured's] own expense, satisfactory proof of Disability before benefits will be paid." [Tr. 1306] The Sixth Circuit has consistently found this and similar language to be sufficiently clear to grant discretion to administrators. *See e.g, Frazier*, 725 F.3d at 567. *See also Cooper v. Life Ins. Co. of North Am.*, 486 F.3d 157, 164–65 (6th Cir. 2007).

Regardless of the contractual language, the plaintiff contends that *de novo* review should apply because LINA did not render a timely decision on her second level appeal.[1] *See*

---

[1] The plaintiff argues for the first time in her reply brief that the defendants acted in bad faith by falsely claiming that they did not receive the vocational report she submitted in support of

- 3 -

29 C.F.R. § 2560.503–1(i)(1)(i), (i)(3)(i) (plan administrator shall notify claimant of benefit determination on review no later than 90 days after receipt of request for review). She acknowledges, however, that in *Daniel v. Eaton Corporation*, 839 F.2d 263, 267 (6th Cir. 1988), the Sixth Circuit explained that an administrator's failure to act on a claimant's appeal does not impact the standard of review. *See also Van Winkle v. Life Ins. Co. of North Am.*, 944 F. Supp. 2d 588, 561–63 (E.D. Ky. 2013). Rather, an administrator's failure to rule on an appeal within the prescribed time limits results in the deemed exhaustion of the claimant's administrative remedies. 29 C.F.R. § 2560.503–1(l)(2). While the Sixth Circuit has questioned the wisdom of this approach in a post-*Firestone* opinion, it remains the law of the circuit and this Court is bound to apply it in this case. *See University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000) (noting, in dicta, that "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner"). Accordingly, the Court will review the administrator's decision applying an arbitrary and capricious standard.

## III.

### A.    The Administrator's Decision Is Supported By Substantial Evidence.

The administrator's decision will be upheld if "it is the result of a deliberate, principled reasoning process and it is supported by substantial evidence." *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005) (quoting *Baker v. United Mine Workers*

---

her second-level appeal. [Record No. 29, p. 5] While the record indicates that the defendants did, in fact, receive the evidence, the circumstances do not demonstrate bad faith. The defendants wrote to the plaintiff advising her that they had not received the evidence and invited her to submit it. [Tr. 1083] Thereafter, the defendants received the report and considered it in rendering the decision on her appeal.

*of Am. Health & Retirement Funds*, 929 F.2d 1140, 144 (6th Cir. 1991)).  Johnson contends that the record contains "a substantial amount of objective medical and vocational evidence" supporting her claim that she is unable to work.  [Record No. 24–1, p. 4]

Under the Plan's terms, Johnson was responsible for providing proof of her disability.  [Tr. 1306]  She identified her treating physicians as the Lexington Clinic and Dr. Greg D'Angelo.  [Tr. 751]  Dr. D'Angelo performed arthroscopic surgery on Johnson's right knee shortly after she stopped working in 2010.  [Tr. 1227]  He last treated her in 2012 and discharged Johnson to return to sedentary work.  [Tr. 740]  In June 2012 and again in June 2014, Johnson underwent functional capacity evaluations which also indicated she could perform sedentary work.[2]  [Tr. 786, 606]

The plaintiff relies primarily on the opinion of Dr. Anthony McEldowney, an orthopedic surgeon she retained to perform an Independent Medical Examination ("IME") on December 17, 2014.  [Tr. 1119–22]  Following this examination, Dr. McEldowney diagnosed Johnson with "[r]ight knee meniscal tear with exacerbation of previously dormant and asymptomatic arthrosis" and chronic pain syndrome. *Id.* at 1121.  He cautioned that Johnson should avoid prolonged periods of standing and walking, climbing ladders, squatting, and other specified activities that would place stress on the knee. *Id.*  Dr. McEldowney opined that, until Johnson underwent a right knee replacement, she was "permanently disabled from gainful employment." *Id.*

Johnson also submitted the opinion of Betty Hale, a vocational expert, who performed an employability evaluation on July 28, 2015.  [Tr. 1038–48]  Relying primarily on Dr.

---

[2] FCE conducted on June 24, 2014, determined that Johnson could sit, reach at desk level, and engage in fine manipulation, and simple grasping constantly.  [Tr. 593, 606]

McEldowney's report, Hale opined that the plaintiff has a "shortened work life" and an "inability to perform a significant range of work on a sustained competitive basis." Hale pointed out that, in denying Johnson's claim for LTD benefits, LINA had failed to consider Johnson's right hand impairments. However, Johnson has failed to identify any medical evidence related to her purported right hand impairments. Notably, Dr. McEldowney's report did not include any objective examination of the plaintiff's upper extremities.

Ultimately, the plaintiff has failed to identify any medical evidence that LINA should have, but did not consider. As the defendants point out, Dr. McEldowney's functional assessment of the plaintiff was nearly identical to those resulting from the FCEs that were conducted at LINA's behest, aside from his conclusory statement that she was permanently disabled from gainful employment. While Dr. McEldowney presumably was qualified to express opinions regarding Johnson's impairments, there is no indication that he is a vocational expert, so his sweeping statement regarding her disability lies outside his scope of his expertise. This is especially compelling considering that the remainder of his report is consistent with the other medical evidence, which suggests that Johnson was capable of sedentary work.

The plaintiff also contends that LINA erred by relying on the file review of Dr. Stephen Jacobson, rather than obtaining its own physical examination. [Record No. 24–1, p. 15] While the failure to conduct a physical examination may raise questions about the thoroughness of a benefits determination in some cases, *see Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005), there is no indication of that here. In this case, LINA's decision was based Johnson's disability questionnaire, Lexington Clinic office notes, Dr. D'Angelo's opinion, the June 2014 FCE, and surveillance which was conducted of Johnson during March of 2014. [Tr.

1567–69] The Sixth Circuit has found that, where the reviewing physician's conclusions are amply supported by the record and there is sufficient objective evidence of the plaintiff's ability to work, reliance on a file review is acceptable. *See e.g., Curry v. Eaton Corp.*, 400 F. App'x 51, 66 (6th Cir. 2010).

### B. The Administrator Gave Proper Consideration To The SSA Decision.

Johnson contends that LINA did not give proper weight to the Social Security Administration's determination that she was totally disabled. However, "an ERISA plan administrator is not bound by an SSA disability determination," when reviewing a claim for benefits under an ERISA plan. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). However, in cases where the plan administrator encourages the applicant to apply for social security benefits or financially benefits from the applicant's receipt of such benefits but fails to explain why the administrator's decision differed from the SSA's, the court should weigh this in favor of finding that the decision was arbitrary or capricious. *Bennett v. Kemper Nat. Servs. Inc.*, 514 F.3d 547, 554 (6th Cir. 2008).

It is likely that the defendants benefitted from the plaintiff's receipt of Social Security benefits, since LTD benefits are reduced by "other income benefits." But there is no suggestion that either of the defendants encouraged the plaintiff to apply for such benefits or that LINA failed to explain why its decision regarding disability differed from that of the SSA. In fact, LINA explained that, although the SSA had awarded disability benefits, LINA's decision was based on more recent medical evidence than that of the SSA.[3]  [Tr. 584]

---

[3] While the parties seem to agree that the plaintiff was awarded SSA benefits sometime in early 2012, the record suggests that the benefits were approved on August 1, 2011. [Tr. 669, 156]

Under the terms of the policy, it was Johnson's obligation to provide medical evidence to LINA demonstrating that she was under a disability. In response to LINA's request for information, Johnson's treating orthopedic surgeon (Dr. D'Angelo) reported that she had been released to return to sedentary work on July 31, 2012. [Tr. 740] Perhaps Johnson submitted evidence of other impairments in support of her Social Security disability claim. Whatever the case, LINA reasonably determined that she did not meet her burden with respect to her LTD claim. While the SSA's determination of disability had some relevance to the LTD claim, it certainly was not dispositive, and the administrator's decision was not arbitrary or capricious in light of it.

### C. Any Alleged Conflict Of Interest Did Not Render The Decision Arbitrary Or Capricious.

The plaintiff also argues that LINA acted under a conflict of interest based on its dual roles as plan administrator and payor. The Sixth Circuit has explained that an inherent conflict of interest exists when an insurance company acts as both the claims administrator and the insurer responsible for paying benefits. *Johnson v. Connecticut Gen. Life Ins. Co.*, 324 F. App'x 459, 465 (6th Cir. 2009). In *Metro Life Insurance Co. v. Glenn*, 544 U.S. 105 (2008), the Supreme Court held that a reviewing court should consider such a conflict as one of many factors in determining whether benefit denial was an abuse of discretion. *See also Okuno v. Reliance Std. Life Ins. Co*., 836 F.3d 600, 607 (6th Cir. 2016). There is no other indication of bias on the part of LINA, however.

As previously explained, there is ample medical and vocational evidence to support LINA's decision. Additionally, each time its decision was reviewed internally, the review was performed by individuals who were not previously involved with the determination. As is

often the case, the defendants obtained medical opinions from sources they selected to assess Johnson's claim. Johnson argues that there was "a clear conflict of interest because [the defendants] had a clear incentive to contract with vendors who were inclined to find in their favor." However, there is no evidence that any conflict of interest actually influenced the plan administrator's decision. *See O'Callaghan v. SPX Corp.*, 442 F. App'x 180, 185 (6th Cir. 2011). Further, there is no indication that the plaintiff sought to explore this issue in discovery. *See McAlister v. Liberty Life Assur. Co. of Boston*, 647 F. App'x 539, 547 n.11 (6th Cir. 2016). Accordingly, there is no reason to give the purported conflict significant weight.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Charlene Johnson's motion for judgment [Record No. 24] is **DENIED**.

2. Each party shall bear its respective costs and expenses.

This 30th day of January, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge